UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JUAN CARLOS VILLEDA-HERNANDEZ, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> BRISON SWEARINGEN, ) <br> SAMUEL OLSON, ) <br> TODD LYONS, ) <br> KRISTI NOEM, ) <br> PAMELA BONDI, ) <br> ) <br> Respondents. ) | No. 2:25-cv-00564-JPH-MG |

**ORDER GRANTING PETITION FOR HABEAS CORPUS**

Juan Carlos Villeda-Hernandez is a noncitizen who entered the United States without inspection in 2002. Dkt. 1 at 12. On October 30, 2025, Immigration and Customs Enforcement ("ICE") agents arrested Mr. Villeda-Hernandez in Indianapolis, Indiana, and then initiated removal proceedings. *Id.* at 13. He now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody or a prompt bond hearing pursuant to 8 U.S.C. § 1226(a), in addition to other forms of relief. *Id.* at 90-93.

For the reasons explained below, the Court **grants** the petition to the extent that **no later than 5:00 p.m. on November 26, 2025, Respondents must either**: (1) afford Mr. Villeda-Hernandez an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a); or (2) release him from custody, under reasonable conditions of supervision.

## I.   Background

Mr. Villeda-Hernandez entered the United States without inspection in April 2002. Dkt. 1 at 12. Since then, he has resided in the United States continuously with his family, including three U.S. citizen children. *Id.* Mr. Villeda-Hernandez's only criminal history is for driving without a license, a matter which has been resolved. *Id.*; *see also* dkt. 8-1 at 3 (I-213 Narrative stating that two state court cases charging Petitioner with driving without a license were dismissed).

On October 30, 2025, ICE agents arrested Mr. Villeda-Hernandez during a traffic stop after he dropped his oldest child off at a bus stop. Dkt. 1 at 13. The agents were part of a Fugitive Operations Team conducting a targeted enforcement. Dkt. 8-1 at 2 (I-213 Narrative). That same day, the Department of Homeland Security ("DHS") issued Mr. Villeda-Hernandez a "Form I-200 Warrant of Arrest of Alien," which commanded "any immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act" to arrest him. Dkt. 8-1 at 9. The I-213 Narrative indicates that the I-200 Warrant was "signed prior to arrest." *Id.* at 2.[1]

DHS then initiated removal proceedings under 8 U.S.C. § 1229(a) and issued Mr. Villeda-Hernandez a Notice to Appear. Dkt. 8-1 at 5–8. The Notice to

---

[1] Mr. Villeda-Hernandez describes the arrest as being warrantless but does not acknowledge the I-200 warrant provided by Respondents. *See* dkt. 1, 11. Mr. Villeda-Hernandez also argues that his arrest was likely the result of racial profiling and his presence at a location of enforcement. Dkt. 11 at 5. He does not acknowledge that the I-213 Narrative explicitly provided that ICE agents were targeting him specifically. Dkt. 8-1 at 2. For the reasons discussed below, the disputes of fact are immaterial to the Court's conclusion that Mr. Villeda-Hernandez is entitled to habeas relief.

2

Appear charges him with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") [8 U.S.C. § 1182(a)(6)(A)(i)] as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General" and § 212(a)(7)(A)(i)(I) [8 U.S.C. § 1182(a)(7)(A)(i)(l)] as an "immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa . . . " *Id.* at 8. The "arriving alien" checkbox is unmarked. *Id.* at 5. Mr. Villeda-Hernandez was subsequently transferred to Clay County Jail in Brazil, Indiana, where he remains detained. Dkt. 1 at 13; *see also*, U.S. Immigration and Customs Enforcement, "Online Detainee Locator System," https://locator.ice.gov/odls/#/search (search reflecting that Mr. Villeda-Hernandez is still housed at the Clay County Detention Center as of November 24, 2025).

On November 11, 2025, Mr. Villeda-Hernandez filed this writ of habeas corpus petition, arguing that his initial arrest was unlawful because it was warrantless and unsupported by probable cause and that Respondents are unlawfully detaining him under 8 U.S.C. § 1225(b)(2)(A). Dkt. 1 at 1-2. He argues that he may only be properly detained under 8 U.S.C. § 1226(a), which entitles him to an individualized bond hearing. *Id.* at 2.

Mr. Villeda-Hernandez was scheduled for a Master Calendar Hearing on November 17, 2025. Dkt. 1-3. According to his petition, he intended to seek relief from removal known as "Cancellation of Removal for Non-Permanent Residents" pursuant to 8 U.S.C. § 1229b(b). Dkt. 1 at 43.

## II. Discussion

Mr. Villeda-Hernandez raises multiple claims for relief under the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), the Due Process Clause of the Fifth Amendment of the United States Constitution, the *Accardi* Doctrine, and *ultra vires* action. Dkt. 1 at 64-83. He requests immediate release without restriction or conditions due to his unlawful arrest. *Id.* at 2. In the alternative, he seeks an order for a discretionary bond hearing before an Article III judge. *Id.* at 3.

Respondents argue that Mr. Villeda-Hernandez's petition is premature because he has not sought relief before an immigration judge or the Board of Immigration Appeals. Dkt. 8. And even if the Court finds exhaustion is not required, Respondents contend that Mr. Villeda-Hernandez is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2).

### A. Exhaustion

When he filed his petition, Mr. Villeda-Hernandez had not yet appeared before an immigration judge, though he was scheduled to appear for a Master Calendar before Judge Saltzman on November 17.[2] Dkt. 1-3.

Respondents argue that, as a result, the instant petition is premature because Mr. Villa-Hernandez has not exhausted all available administrative remedies. Mr. Villa-Hernandez argues that any attempt to exhaust his administrative remedies would be futile because an immigration judge would

---

[2] There is no evidence in the record indicating that Mr. Villeda-Hernandez requested a bond determination at the hearing or was provided a bond hearing under § 1226 during the November 17 hearing.

4

deny his request for a bond hearing under the Bureau of Immigration Appeals ("BIA") decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which held that immigration judges do not have the authority to hold a bond hearing where the moving noncitizen entered the country without inspection, as such individuals who are subject to the mandatory detention under § 1225. Because Mr. Villeda-Hernandez entered the country without inspection, if he were to move for a bond hearing, an immigration judge would be required to decline jurisdiction over the issue and not conduct a bond hearing. This scenario is not hypothetical or speculative as recently illustrated in *Mendoza-Loera v. Warden*, 2:25-cv-554 (S.D. Ind. 2025). There, before filing his habeas petition in this Court, the petitioner, who like Mr. Villeda-Hernandez had been in the United States for many years and was arrested by DHS pursuant to a warrant, requested a bond hearing in proceedings before an immigration judge. The immigration judge denied the petitioner's request for a bond hearing, stating that "[t]he court lacks jurisdiction to consider bond under the Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025)." *Mendoza-Loera*, dkt. 14 at 2; dkt.16 at 3.

There is no statutory requirement that Petitioner move for a bond hearing before an immigration judge before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In similar circumstances, other district courts determined that the petitioner was not required to exhaust administrative remedies by seeking a bond hearing before an immigration judge because doing

5

so would be futile given *Matter of Yajure Hurtado*'s holding. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citations omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2-3, 6-9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing). The Court finds the reasoning applied in these cases persuasive and concludes that Mr. Villeda-Hernandez was not required to exhaust administrative remedies because doing so would be futile.

### B. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with

6

the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond . . . ; or
> (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers *shall* order certain noncitizens removed

7

without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, it provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### C. Mr. Villeda-Hernandez Has Not Met His Burden to Show His Arrest Was Warrantless

Mr. Villeda-Hernandez argues that his arrest was unlawful because ICE agents arrested him without a valid warrant for interior apprehension as required by § 1226(a) and lacked probable cause to arrest him without a warrant. Dkt. 1 at 58–62. He argues that he is entitled to release without any conditions and that any evidence obtained during the arrest must be suppressed. *Id.* at 62–63.

8

But Mr. Villeda-Hernandez does not acknowledge that Respondents produced a copy of the warrant that was issued the day of his arrest. *See* dkt. 8-1 at 9–10. Nor does he acknowledge the I-213 narrative reflecting that Mr. Villeda-Hernandez was identified as a "targeted subject". *Id.* at 2–3. The Court therefore finds that he has not met his burden of showing he is entitled to the extraordinary relief he seeks—release with no conditions and suppression of statements he made acknowledging he is in the country without legal status.

### D. Mr. Villeda-Hernandez Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)

The record does reflect, however, that Mr. Villeda-Hernandez is eligible for a bond hearing under § 1226(a).

Respondents argue that Mr. Villeda-Hernandez is subject to the broader "catchall provision" in § 1225(b)(2) because he is an "applicant for admission" according to § 1225(a)(1), who is not covered by the narrower provisions for "arriving aliens" in § 1225(b)(1), and who is "not clearly and beyond doubt entitled to be admitted." Dkt. 8 at 7-8.

The Court has previously determined that considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States rather than undocumented aliens like Mr. Villeda-Hernandez who have lived in the interior of the United States for years. *See Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *Mendoza-Loera v. Warden, Clay Co. Jail*, 2:25-cv-00554-JPH-MJD, dkt. 16 at 8–11 (S.D. Ind. Nov. 21, 2025). As the Court has previously

explained, Respondents' interpretation of the statute (1) disregards the plain meaning of § 1225(b)(2)(A); (2) disregards the relationship between §§ 1225 and 1226; (3) would render a recent amendment to § 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice. *Alejandro*, 2025 WL 2896348, at *14-19. Respondents have cited no binding precedent to the contrary. In *Mendoza-Loera*, 2:25-cv-00554-JPH-MJD, the Court found that the few district court decisions adopting the Respondents' interpretation of § 1225 were distinguishable or otherwise unpersuasive. Dkt. 16 at 8.

Here, Respondents have submitted a warrant that shows Mr. Villeda-Hernandez was detained pursuant to § 1226. Dkt. 8-1 at 9-10. The record currently before the Court therefore shows that § 1225's mandatory detention provision does not apply to Mr. Villeda-Hernandez.

The Court concludes that Mr. Villeda-Hernandez is entitled to a bond hearing under § 1226, and it declines to reach Mr. Villeda-Hernandez's other arguments.

### III. Scope of Relief

Mr. Villeda-Hernandez is entitled to habeas relief because his continued detention without a bond hearing violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Mr. Villeda-Hernandez requests immediate release from custody or, in the alternative, an individualized bond hearing before an Article III judge. Dkt. 1

10

at 5. Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody).

However, the Court finds that it would not be in the interests of justice to order Mr. Villeda-Hernandez's immediate release and instead orders Respondents to provide him an individualized bond hearing as required by § 1226(a). Mr. Villeda-Hernandez requests that this Court conduct the § 1226 hearing, but he cites no case in which a district court has chosen to usurp the role of an immigration court and conduct such a hearing. The Court declines to do so here.

### IV. Conclusion

The Court **grants** the petition to the extent that **no later than 5:00 p.m. on November 26, 2025, Respondents must either**: (1) provide Mr. Villeda-Hernandez with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a); or (2) release Mr. Villeda-Hernandez from custody, under reasonable conditions of supervision. No later than **5:00 p.m. on December 1, 2025,** Respondents must file a notice with the Court certifying that they have complied with the Court's order. The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 11/24/2025

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Liberty L. Roberts
CHURCH CHURCH HITTLE & ANTRIM (Noblesville)
lroberts@cchalaw.com

Karen Weinstock
Weinstock Immigration Lawyers
kweinstock@visa-pros.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov